UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SCOTT B. PRICE, | ) |
|     *Petitioner*, | ) |
| v. | ) No.: 3:06-cv-294 |
| | ) (VARLAN/SHIRLEY) |
| DAVID MILLS, Warden, | ) |
|     *Respondent*. | ) |

**MEMORANDUM**

This is a petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Scott B. Price ("Price"). The matter is before the Court on the respondent's answer to the petition. For the following reasons, the petition for the writ of habeas corpus will be **DENIED** and this action **DISMISSED WITH PREJUDICE**.

I.  Standard of Review

Under Rule 8 of the Rules Governing Section 2254 Cases In The United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the case as justice dictates. If the record shows conclusively that Price is not entitled to relief under § 2254, there is no need for an evidentiary hearing and the petition should be denied. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

II.  Factual Background

The respondent has provided the Court with copies of the relevant documents as to Price's direct appeal and post-conviction proceedings. [Doc. 24, Notice of Filing Documents, Technical Record on Direct Appeal and Transcript of Evidence at Trial (erroneously characterized by respondent as the appellate record of the post-conviction appeal); Doc. 25, Notice of Filing Documents, Technical Record of Post-Conviction Proceedings and Transcript of Post-Conviction Hearing; Doc. 26, Briefs of the Parties and Opinions of the State Courts on Direct Appeal and in Post-Conviction Proceedings].

Price was convicted by a jury, in the Circuit Court of Knox County, Tennessee, of rape of a child and sentenced to 21 years imprisonment. On direct appeal, Price challenged his sentence as excessive. The Tennessee Court of Criminal Appeals disagreed and affirmed the sentence. *State v. Price*, No. E2000-00441-CCA-R3-CD, 2001 WL 1464555 (Tenn. Crim. App. Nov. 19, 2001) [Doc. 26, Exhibit 4, Slip Opinion].

Price then filed a petition for post-conviction relief, in which he alleged three instances of ineffective assistance of counsel. The petition was denied after an evidentiary hearing and the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. *Price v. State*, No. E2004-02718-CCA-R3-PC, 2005 WL 3479242 (Tenn. Crim. App. Dec. 16, 2005), *perm. app. denied, id.* (Tenn. May 1, 2006) [Doc. 26, Exhibit 8, Slip Opinion].

In post-conviction proceedings, the Tennessee Court of Criminal Appeals summarized the evidence against Price as follows:

2

> Petitioner was convicted of raping a twelve-year-old child. The victim was a neighbor who had come to Petitioner's house to borrow some sugar. Upon entering the home, Petitioner pulled the victim into the bathroom and proceeded to remove her shorts and underpants. Petitioner laid on top of the victim, began touching her, and forced her to have sexual intercourse with him. The victim was shocked and scared and consequently did not scream or fight Petitioner during the incident. The incident lasted approximately five to ten minutes. After it was over, Petitioner instructed the victim not to tell anyone. The victim, upset and crying, left Petitioner's house and ran to her own home.
>
> Upon reaching her house, the victim told her aunt what had happened. A friend of her aunt's called the police and a police officer and an ambulance came to the victim's residence. The victim was taken to the hospital and given a medical examination but refused to allow the doctor to complete it. The medical record, which was not introduced at trial, shows that the victim had no lesions, no abrasions, and no lacerations. It also shows that the victim had a "redundant hymen," indicating the hymen remained intact after the incident. A rape kit was also administered and given to the crime lab, but was not processed because Petitioner subsequently confessed to having sex with the victim.
>
> Petitioner's confession was audio recorded by the investigating officer and introduced at trial. A transcript of the tape reveals that Petitioner admitted to having sex with the victim, but he asserted that the victim was the initial "aggressor." Petitioner stated that he began having intercourse with the victim but realized what he had done and immediately stopped. Petitioner did not testify at trial and did not present any evidence.

*Id.*, 2005 WL 3479242 at *1.

In support of his federal petition for the writ of habeas corpus, Price raises the same three claims of ineffective assistance of counsel as well as his challenge to the length of his sentence. The respondent contends the latter is not cognizable on collateral review by a federal court sitting in habeas corpus, and that Price is not entitled to relief on the former based upon the findings of the state courts.

3

III.   State Court Findings

Pursuant to 28 U.S.C. § 2254(d), Price may not obtain federal habeas corpus relief with respect to a claim that was adjudicated on the merits in a state court proceeding unless the state court decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law or (2) was not reasonably supported by the evidence presented to the state court.  In addition, findings of fact by a state court are presumed correct and Price must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

The Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), clarified the distinction between a decision "contrary to," and an "unreasonable application of," clearly established Supreme Court law under § 2254(d)(1).  A state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id*. at 413.  A state court decision "involves an unreasonable application of clearly established Federal law" only where "the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id*. at 411.

Case 3:06-cv-00294   Document 33   Filed 09/17/09   Page 4 of 17   PageID #: 14

IV. Discussion

## A. *Ineffective Assistance of Counsel*

Price alleges three instances of ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984) the United States Supreme Court established a two-part standard for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687.

To establish that his attorney was not performing "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson*, 397 U.S. 759, 771 (1970), Price must demonstrate that the attorney's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 687-88. In judging an attorney's conduct, a court should consider all the circumstances and facts of the particular case. *Id*. at 690. Additionally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A finding of serious attorney incompetence will not justify setting aside a

5

conviction, however, absent prejudice to the defendant so as to render the conviction unreliable. *Id.* at 691-92.

Price alleges his attorney rendered ineffective assistance of counsel by failing to do the following: (1) investigate Price's claim that the audio recording of his confession was materially altered; (2) advise Price to testify in order to rebut the State's evidence and subject the prosecution to meaningful adversarial testing; and (3) use available medical records to challenge the accuser's testimony.

These were the same claims of ineffective assistance of counsel considered and rejected by the Tennessee Court of Criminal Appeals in post-conviction proceedings:

> In his appeal, Petitioner argues that he was denied effective assistance of counsel because (1) trial counsel did not investigate Petitioner's claims that his audio recorded confession was materially altered; (2) trial counsel did not advise Petitioner to testify in order to rebut the State's evidence; and (3) trial counsel did not use available medical records to challenge the accuser's testimony at trial. We affirm the judgment of the trial court.

*Price v. State*, 2005 WL 3479242 at *1.

In analyzing Price's claims of ineffective assistance of counsel, the Tennessee Court of Criminal Appeals first summarized the evidence presented at the post-conviction evidentiary hearing:

> At the post conviction hearing, Petitioner testified that his appointed trial counsel, Laura Hendricks, now Laura Rule, represented him for ten to eleven months. Petitioner testified that in that time period, he met with counsel only one time. During that meeting, Ms. Rule played for Petitioner his audiotaped confession in which he admitted to Officer Pressley that he had sexual intercourse with a twelve-year-old child. Petitioner testified that he complained that the taped confession was materially altered and requested that trial counsel have the tape tested for alterations. Specifically, he claimed that

6

the questions and answers in the recorded confession had been rearranged, making it sound as though he admitted to having actual intercourse with the child when in reality he only made initial advances but did not complete the act. Petitioner told his trial counsel that he never told Officer Pressley that he penetrated the victim in any way. He told his trial counsel that when he answered Officer Pressley's questions, the officer would wrap a sentence around his answer to make it different. Petitioner testified that Ms. Rule told him that testing the tape was not possible. He further claimed that after his conviction, Ms. Rule informed Petitioner that the tape could have been tested if he had paid her. The actual tape was not available at the post-conviction hearing, and it is thus not available on appeal.

Petitioner complained that he never discussed trial strategy with Ms. Rule, other than being told that his only option was to serve fifteen years in prison at (85%) eighty-five percent. The only physical evidence Petitioner saw was the victim's medical record. Petitioner testified that he found the record significant because it revealed that the accuser had a redundant hymen. During the trial, he informed his attorney that he wanted to testify regarding the taped confession and his version of the events that occurred on the day of the incident. Petitioner admitted at the post-conviction hearing that he was aware that his prior convictions could be used to impeach his credibility during cross-examination, but he believed that he had done nothing wrong in this case and insisted that he be allowed to testify. Petitioner testified that his trial counsel advised him that if he testified it might do more to hurt his case than to help and that his testimony was not part of her strategy. Petitioner did not testify, and he did not inform the trial court that he wanted to testify.

Laura Rule testified that she had been a full-time practicing attorney since October of 1990. For at least the first eight years of her practice, seventy-five percent of her caseload consisted of criminal defense work. At the time of the post-conviction hearing, she was the Blount County Staff Attorney for Legal Aid of East Tennessee. At the time of Petitioner's trial, Ms. Rule was primarily practicing criminal law in Knox County and throughout East Tennessee. She regularly accepted appointments to represent indigent clients. She was appointed to represent Petitioner in the summer of 1998.

Ms. Rule testified that she met with Petitioner on approximately four occasions. She talked with Petitioner by telephone several times, and talked to his wife on a daily basis. She stated that she met with Petitioner shortly after being appointed to represent him. She met with him again prior to the suppression hearing, immediately after the suppression hearing, and prior to

7

going to trial. Despite having heard the tape previously, it was only after the suppression hearing that Petitioner first told Ms. Rule that he believed that the audiotaped confession had been altered. Prior to the suppression hearing, Petitioner told Ms. Rule that he was intoxicated the night that he gave his statement, and that he had no recollection at all of anything on the tape, nor would he have voluntarily given the statement. Consequently, Ms. Rule scheduled another meeting with Petitioner to listen to the tape again and discuss Petitioner's new found knowledge of what he said during the taped confession.

Petitioner admitted that he had confessed to sexual intercourse with the victim. He asserted however, that certain other statements on the tape had been taken out of context or removed. Petitioner explained that there were missing portions of the tape in which he stated that the victim had seduced him and that he was unaware that she was only twelve years old. Petitioner wanted to have an expert test the tape to determine if it had been materially altered. Petitioner never claimed that his words had been changed inside the tape. He claimed only that certain statements explaining his conduct had been removed.

Ms. Rule explained to Petitioner that because he admitted that he had sex with a twelve-year-old child, it did not matter that the other statements may have been removed because those omitted statements were not exculpatory given the nature of the crime. She further explained that if the tape were tested and none of the omitted statements altered the incriminating statement, it would be worse for Petitioner because then there could be an expert on the stand testifying that Petitioner raped the child. Ms. Rule testified that Petitioner never denied having sex with the victim. Petitioner's position was always that he had sex with the victim, but she initiated the sex, and that once he realized what he had done, he immediately stopped. Ms. Rule denied telling Petitioner that if he had paid her, the tape could have been tested.

Ms. Rule was notified of the victim's medical exam and she shared the results with Petitioner. She advised Petitioner that she did not think the report should be introduced at trial because it contained statements which incriminated him in the rape of the victim. Ms. Rule acknowledged that the statements in the report were consistent with the victim's trial testimony, but she did not want to reinforce that information to the jury in writing. She advised Petitioner that the victim's redundant hymen was insignificant because it did not prove that she had not had sex. This was of particular importance because Petitioner had consistently maintained that the victim was sexually active on a regular basis.

8

The State made offers to settle with Petitioner on more than one occasion. Ms. Rule did not remember the exact nature of the offers, but did recall the final offer made on the day of trial. That offer was an agreement wherein Petitioner would plead to one count of child rape and serve fifteen years, and the second count of child rape would be dismissed. She and Petitioner discussed what the proof would show at trial and Petitioner gave a qualified acceptance. He wanted to remain out of jail until his wife gave birth to their child. The State would not agree to the arrangement.

On the day of trial, Petitioner informed Ms. Rule that he wanted to hire a new attorney. The new attorney was not present but Ms. Rule notified the trial court of Petitioner's wishes and they proceeded to trial. According to Ms. Rule, it was absolutely Petitioner's decision whether to take the stand at trial. She advised Petitioner that he had an absolute right to testify. She advised him that if he testified the jury would be made aware of his prior convictions. Ms. Rule told Petitioner that the outcome of the trial would largely depend on whether the jury believed him. She also told Petitioner that she thought his testimony would do more damage than good. Ms. Rule advised Petitioner that she was prepared to do a direct examination if he chose to testify. Petitioner elected not to testify. Ms. Rule obtained a private investigator to interview all the people Petitioner wanted interviewed both for trial and for the sentencing hearing. None of the evidence recovered from these witnesses amounted to a defense, and none of these witnesses testified at trial.

Mr. Russell Greene was appointed to represent Petitioner at his sentencing hearing, in his motion for new trial, and in his motion for acquittal. He also started Petitioner's direct appeal before it was taken over by Mr. Gerald Gulley. Mr. Greene testified that he had been a licensed, practicing attorney since 1997, and during that time his practice had been ninety-nine percent criminal defense. Mr. Greene was appointed to represent Petitioner after the court granted Ms. Rule's motion to withdraw as counsel.

Mr. Greene and Petitioner discussed three issues to be raised in Petitioner's motion for new trial. The first was an allegation by Petitioner that the foreman of the jury polluted his trial because of a prior relationship between Petitioner and the foreman. Mr. Greene was not able to uncover evidence to support this allegation. The second issue was in regard to a rape kit which was administered to the victim but never processed. The district attorney at the time cited Petitioner's confession as the reason the rape kit was never processed. The third issue dealt with Petitioner's allegations that his audiotaped confession had been materially altered. It was Petitioner's

9

contention that the tape had been spliced and his answers to certain questions had been altered.

Petitioner told Mr. Greene that the tape had been altered in that his answers were changed and taken out of context. Petitioner also told Mr. Greene that he had been drinking and smoking before giving his confession and that his memory was fuzzy regarding his answers to the detective's questions. Mr. Greene gave Petitioner a copy of the transcript of the audiotaped confession and had him mark the transcript in the areas Petitioner thought were suspect. Petitioner's marks were significant and Mr. Greene tried but was unable to find someone local to examine the tape for alterations. He finally found someone in Iowa who could examine the tape for approximately sixteen hundred dollars. Mr. Green petitioned the court of criminal appeals for money to test the tape but the court denied such an allowance. He then asked Petitioner's father for the money and his father also refused. It was never possible to test the tape because Petitioner could not come up with the money. For this reason, the issue of the altered tape was not raised in the motion for new trial.

Mr. Gerald Gulley testified that he had been a practicing attorney since 1989, doing a mixture of civil and criminal work. From the late 1990's through 2001, he contracted with the Tennessee Public Defender's Conference to write appellate briefs for indigent criminal defendants. Mr. Gulley was appointed to handle Petitioner's appeal. Mr. Gulley spoke with Mr. Greene about the issues raised in the motion for new trial. He went to the Northeastern Correctional Complex to meet with Petitioner in 2001. During the post-conviction hearing, Mr. Gulley testified that he explained to Petitioner that the issues Petitioner could raise on direct appeal were limited to those issues raised in the motion for new trial, thus the altered tape could not be argued on appeal. He explained to Petitioner that the best place to pursue that issue was in a post-conviction hearing. A sentencing challenge was the only non-frivolous issue Mr. Gulley felt Petitioner could legitimately raise on direct appeal.

*Id.* at \*\*2-5.

The appellant court next noted the standard of review for considering claims of ineffective assistance of counsel was set forth in *Strickland*. "For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must establish

10

that counsel's performance was deficient, and that the deficiencies in performance were prejudicial and "actually had an adverse effect on the defense." *Id.* at *5 (quoting *Strickland v. Washington*, 466 U.S. at 693).

The appellate court then rejected Price's arguments:

> Petitioner first claims that trial counsel was ineffective because she failed to investigate Petitioner's claims that his audio confession was materially altered. Ms. Rule testified that in her opinion it was not the best strategy to have the tape tested. She explained that although Petitioner claimed some of the statements in the tape had been altered, he could not deny his statement admitting he had sex with the victim. Ms. Rule further explained that given the nature of the crime, the allegedly altered statements would not be mitigating in light of the admission. Those statements included Petitioner's assertions that he was unaware of the victim's age, and that the victim actually seduced him. It was Ms. Rule's testimony that she felt that if the tape was tested and Petitioner's admission was unaltered, it would be detrimental to his case to have an expert on the stand testifying, in effect, that Petitioner raped the child.
>
> After a review of the trial transcript, the post-conviction court found that only Petitioner raised claims regarding the authenticity of the tape. The court noted that on different occasions Petitioner told two different attorneys that he was so intoxicated that he could not remember his confession to the investigating officer. The post-conviction court found that Ms. Rule's decision not to test the tape did not fall below the obligations of counsel as set forth in *Strickland v. Washington*. The fact that Ms. Rule's trial strategy was not favorable to Petitioner is not indicative of deficient performance. It was a strategic and tactical choice not to test the tape, and we will not attempt to second-guess counsel's course of action. Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's finding that trial counsel rendered effective assistance in this regard. Petitioner is not entitled to relief on this issue.
>
> Petitioner next argues that trial counsel was ineffective in not advising Petitioner to testify in order to rebut the audio taped confession offered by the State. Petitioner contends that without his testimony or any physical evidence to rebut the taped confession, the State's evidence was left unchallenged and the jury had no choice but to convict him. Ms. Rule testified that she told Petitioner that it was his choice whether to testify at trial. She admitted that she

11

told Petitioner it would do more harm than good because it would raise issues regarding Petitioner's credibility due to his prior criminal record. Ms. Rule told Petitioner that she was prepared to conduct a direct examination if he wanted to testify. Petitioner admitted that trial counsel did not instruct him not to testify, but that she implied that if he did testify he would be convicted. He stated that he understood that he could testify, but thought that it was trial counsel's ultimate decision because she was the attorney and knew about the law. Petitioner never informed the trial court of his desire to testify or of any limitation trial counsel placed on his right to testify.

The post-conviction court found insufficient proof to show that Petitioner was forcefully denied his right to testify. The court found the proof indicated that it was Petitioner's choice not to testify due to his prior criminal record. As stated above, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact" and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. The post-conviction court accredited the testimony of trial counsel. The evidence in the record does not preponderate against the post-conviction court's credibility determination. The petitioner has not proven by clear and convincing evidence that Ms. Rule was ineffective by denying him the right to testify on his own behalf. We parenthetically note that Petitioner's trial occurred in April of 1999, prior to the release of the decision in *Momon v. State*, which requires a jury-out hearing, on the record, indicating that Petitioner knowingly and voluntarily waives his fundamental constitutional right to testify. *Momon v. State*, 18 S.W.3d 152, 161-62.

Finally, Petitioner claims that trial counsel was ineffective in that she did not use the available medical record which revealed that the victim had a redundant hymen after the incident. Petitioner asserts that the redundant hymen would have served as corroborative evidence to his claim that he did not penetrate the victim. Ms. Rule asserted that she did not use the medical record because it contained statements incriminating Petitioner in the rape of the victim. She also explained that a redundant hymen is not conclusive as to whether a woman has had sex. Additionally, Petitioner had consistently maintained that the victim was sexually active and he never denied having sexual intercourse with the victim. Ms. Rule reasoned that it would be more detrimental to give the jury a sheet of paper which contained written statements from the victim that she was raped by Petitioner, than to withhold the fact of the redundant hymen. Ms. Rule testified that she did not want to give the jury something that would enforce Petitioner's guilt upon the jury.

12

> The post-conviction court, by its finding of effective assistance of counsel, implicitly found that the decision to withhold the medical record from evidence was not indicative of deficient performance by trial counsel. Again, it was a reasoned, strategic decision, and one Ms. Rule undertook in an apparent effort to protect Petitioner's interests. She declined to use the medical record as evidence in an effort to prevent giving the jury written evidence confirming Petitioner's guilt. Such a tactical decision will not be second-guessed or undermined by this Court. As such, we find that the evidence does not preponderate against the post-conviction court's findings that Ms. Rule was not ineffective in failing to introduce the medical record into evidence.

*Id*. at **6-8 (internal citations omitted). This Court has reviewed the transcript of Price's post-conviction hearing [Doc. 25, Addendum 2, Transcript of Evidence of Post-Conviction Hearing, pp. 1- 122] and finds the decision by the Tennessee Court of Criminal Appeals is supported in the record.

Price insists that his audiotaped confession to the police was altered. There is nothing in the record, however, to support that allegation other than Price's self-serving statement. Ms. Rule testified that Price told her he was intoxicated the night he gave the statement and had no recollection of anything on the tape. [*Id*. at 62]. In addition, according to Ms. Rule, the things Price was complaining about were not exculpatory regarding rape of a child and Price agreed with the accuracy of the inculpatory statements on the tape; Price never denied having sex with the victim but insisted she was the one who initiated it. [*Id*. at 63-65]. In Ms. Rule's opinion, it would not have helped to have audiotape examined. [*Id*. at 65].

Russell Greene represented Price at sentencing and during the motion for new trial. He testified that one of the grounds in the motion for new trial concerned the alleged tampering of the audiotape. He found an expert in Iowa who could check to see if the

13

original tape had been tampered with. The expert was going to charge "around fifteen, sixteen hundred dollars ($1,600) just to listen to it." [*Id.* at 96]. Mr. Greene petitioned the Administrative Offices of the Court for the money to pay the expert and was refused; Price's father also refused to pay for the expert. [*Id.* at 96-97]. Mr. Greene also testified that Price told him he had been drinking and smoking that night, and things were fuzzy. [*Id.* at 97-98].

Ms. Rule testified it was absolutely Price's decision whether to testify; she advised him that he had the absolute right to take the stand, but if he did the jury would be made aware of his prior convictions and she advised him it would do more harm than good for him to testify. [*Id.* at 69-70]. Price admitted that his attorney did not tell him he could not testify, but rather advised him not to testify, believing that his testimony would do more harm than good in light of his prior convictions. [*Id.* at 32-36].

With respect to the medical records, Ms. Rule testified that in her opinion the records would hurt the defense because they contained incriminating statements that the victim made against Price and, although the statements were consistent with victim's trial testimony, she did not want jury to see that in black and white. [*Id.* at 65-66]. Ms. Rule further testified that the fact the victim had a redundant hymen did not mean the victim had not had sex. [*Id.* at 66].

Gerald Gulley represented Price on appeal. He testified that, after researching the record, he concluded the sentencing issue was the only issue to raise on appeal. [*Id.* at 102-103].

14

Based upon the foregoing, this Court concludes that the state courts' determinations that Price received the effective assistance of counsel were neither contrary to, nor did they involve an unreasonable application of, federal law as established by the Supreme Court in *Strickland v. Washington*. Price is not entitled to relief on his claims of ineffective assistance of counsel.

### B. *Excessive Sentence*

Price contends that the trial court erroneously sentenced him to 21 years imprisonment at 85% release eligibility. Price raised this issue in the Tennessee Court of Criminal Appeals as a matter of state law only. [Doc. 26, Exhibit 2, Brief of Appellant, pp. 2-3]. As such, "it is not cognizable in a federal habeas corpus proceeding." *Spalla v. Foltz*, 788 F.2d 400, 405 (6th Cir. 1986). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990) ("federal habeas corpus relief does not lie for errors of state law"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Sinistaj v. Burt*, 66 F.3d 804, 807 (6th Cir. 1995) ("Errors of state law alone cannot form the basis of relief under federal habeas corpus.").

To the extent Price now claims that his sentence violated his right to due process under the Fourteenth Amendment, Price has procedurally defaulted that claim for the following reasons. The doctrine of procedural default is an extension of the exhaustion doctrine. A state prisoner's petition for a writ of habeas corpus cannot be granted by a federal

15

court unless the petitioner has exhausted his available state court remedies. 28 U.S.C. § 2254. This rule has been interpreted by the Supreme Court as one of total exhaustion. *Rose v. Lundy*, 455 U.S. 509 (1982). Thus, each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971). *See also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (Exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review."). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

Having presented his claim to the Tennessee courts as a matter of state law only, Price cannot now raise it as a federal constitutional claim in this Court. *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court will not address a habeas petitioner's federal constitutional claim unless the petitioner has first fairly presented the claim to the state courts.") (citation omitted).

V.   Conclusion

The petition for habeas corpus relief will be **DENIED** and this action **DISMISSED**. Rule 4 of the Rules Governing Section 2254 Cases In The United States District Courts. Price having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253(c); Rule 22(b) of the Federal Rules of Appellate Procedure. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the

16

Federal Rules of Appellate Procedure. The Court will further **DENY** Price leave to proceed

*in forma pauperis* on appeal.

      **AN APPROPRIATE ORDER WILL ENTER.**


                                      s/ Thomas A. Varlan
                                      UNITED STATES DISTRICT JUDGE